UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE, suing by and on behalf of her minor daughter, MARY DOE, Plaintiff, | : : : : |
| v. | : Case No. 3:06-cv-1680 (PCD) : |
| HAMDEN BOARD OF EDUCATION, Defendant. | : : : |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jane Doe brings this suit against the Hamden Board of Education by and on behalf of her minor daughter Mary Doe.[1] In 2005, Mary Doe, a student at Hamden High School in Hamden, Connecticut, was raped by another student. Plaintiff alleges that after Mary Doe reported the assault and the police conducted an investigation of the perpetrator and other students, the defendant Hamden Board of Education ("the Board") failed to protect Mary Doe from discrimination and otherwise denied her the benefits of an education on the basis of her sex, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688. The Board now moves for summary judgment. For the reasons stated below, Defendant's Motion for Summary Judgment [Doc. No. 31] is **denied.**

**I.   BACKGROUND**

For the purposes of this motion, the Court accepts as true undisputed facts and resolves disputed facts in favor of Plaintiff where she provides evidence to support her allegation.[2]

---

[1]   Because this case involved the sexual assault of a minor, the Court granted the Plaintiff's motion to proceed in a fictitious name and to refer to her and her daughter as Jane and Mary Doe, respectively. (See Doc. Nos. 3, 6.)

[2]   The Court notes that at several points in Plaintiff's Rule 56(a)(2) Statement, she cites to deposition testimony or an interrogatory which does not support her assertion, and she makes several arguments in her opposition memorandum which are not supported by the

Plaintiff Jane Doe, a resident of Connecticut, is the mother of Mary Doe, who was a student at Hamden High School at the time of the incidents alleged in this action. In July 2005, a Hamden High School student named Juan Garcia sexually assaulted Mary Doe off school grounds in Berlin, Connecticut. During the subsequent school year, Mary Doe was a sophomore at Hamden High School and Juan Garcia was a senior. Mary Doe first disclosed the rape to her therapist in January 2006. Mary's therapist promptly notified Mary's mother Jane Doe, the Department of Children and Families, and the police departments of Berlin and Hamden. On January 17, 2006, the Hamden Police Department went to Hamden High School and questioned several witnesses.

While it is undisputed that Garcia was arrested on February 16, 2006, and charged for the sexual assault of Mary Doe, Plaintiff contends that he was arrested at Hamden High School (Pl.'s Local R. 56(a)(2) Statement ¶ B.5), and Defendant claims he turned himself in at the Berlin Police Department in Berlin, Connecticut. (See Def.'s Reply, Ex. G.) The Board did not receive the statutory notice of Garcia's arrest, as required by Conn. Gen. Stat. § 10-233h, until October 27, 2006 (Def.'s Local R. 56(a)(1) Statement ¶ 20), but there is some dispute as to when the Board received actual notice of Garcia's arrest. Plaintiff argues that the Board must have been on notice of Garcia's arrest because of various communications between the Does, the Hamden Police Department, and several students and school administrators about the sexual assault. Jane Doe testified that she spoke to the principal of the school and to the assistant principal, Dr. Clydette Messiah, about the assault shortly after Garcia was arrested. (Jane Doe Dep. at 44.) Mary Doe testified at her deposition that after Garcia was arrested she told Dr. Messiah about the

---

evidence presented. Plaintiff's counsel is reminded that making unsubstantiated assertions and leaving the Court to pore over the record to find disputed facts does nothing to advance his client's interests.

sexual assault and about her being afraid of seeing him in the hallways at school. (Mary Doe Dep. at 33, 36-37.) Plaintiff also contends that the school was aware of the allegations against Garcia since police officers had been at school on January 17, 2006, questioning witnesses in connection with the assault, and again on February 2, 2006, speaking to students who had harassed Mary in connection with the allegations of rape.

At the end of January or beginning of February 2006, after Jane Doe had notified the authorities about the sexual assault, Mary Doe was harassed at school and online by several of her classmates. On more than one occasion she called her mother from school and told her she was afraid of being beaten up by Garcia's friends and had to have other friends of hers escort her to and from class for protection. (Jane Doe Dep. at 57.) Mary Doe complained to the Hamden Police Department and to Dr. Messiah about this harassment. Dr. Messiah responded by granting Mary Doe passes to leave classes early so as to avoid any harassing students in the hallway, and Mary testified that Dr. Messiah always helped her whenever she spoke to Dr. Messiah about any harassing incidents. Mary was also provided a Hamden Police Department School Resource Officer to escort her around school whenever she requested it. Although there was never an instance where Mary asked the officer to escort her and he refused, there were occasions when she felt that she needed an escort but could not find the officer to ask him for assistance and instead relied on her friends to escort her around. (Mary Doe Dep. at 41-42.) On February 6, 2006, the Hamden Police Department School Resource Officers spoke to the students who were harassing Mary Doe and their parents about their behavior. After February 6, Mary Doe was not directly verbally harassed by any of these students, though she testified that she continued to be bothered by their giving her dirty looks, indirectly but audibly calling her names, and spreading

rumors about her. (See id. at 44-45, 48.)

Aside from the verbal harassment from other students, Mary Doe felt intimated and scared by Mr. Garcia and his friends on a daily basis. (Pl.'s Opp. Ex. 4.) Although Mr. Garcia never spoke to Mary Doe again, he would often come to her classes, and on one occasion he inappropriately touched her.[3] In her interrogatory answers, Mary Doe stated that she told the School Resource Officer that she was uncomfortable with his coming to her classes and his friends staring her down and that her mother called the school each time this happened, but the school did nothing in response. (Pl.'s Opp. Ex. 4.) She also testified that she felt it was necessary to be escorted for protection when he was near her. (Mary Doe Dep. at 143.) There is no evidence that Garcia was removed from school or otherwise disciplined subsequent to his arrest,[4] and he finished the school year and graduated with his class in June 2006. Because Garcia was at school walking around freely and coming to her classes, Mary could not

---

[3] Mary Doe testified at her deposition:

> Q: ... Did you ever say anything to Juan Garcia after he was arrested?
> A. No. I didn't talk to Juan at all.
> Q: Other than the fact that he showed up at the wood working class, did he ever approach you and say anything to you to harass you?
> A. No. But he smacked my butt.

(Mary Doe Dep. at 53.)

[4] The Hamden High School Green and Gold Guide, the student and parent handbook, provides: "The following actions off school property may, depending on the particular circumstances, lead to a suspension or expulsion as such actions or conduct endanger persons, property, or may cause disruption of the educational process. Examples may be but not limited to criminal arrest for possession of illegal substances with or without the intent to sell, criminal arrest for illegal possessions of dangerous deadly weapons, criminal arrest for sexual assault, assault with intent to kill or felonious assault, criminal arrest for armed robbery and physical assault on any employee, staff member of the Hamden Board of Education." (See Pl.'s Opp., Ex. 3 § 4.B.)

concentrate on her school work, quit the high school soccer team, and suffered other emotional distress. Jane Doe testified that, subsequent to Garcia's arrest, she visited Hamden High School and made several pleas, in person and by written notice, to school administrators for help for Mary, but the school administrators did not offer to hold any intervention meetings or help in any other way. (Jane Doe Dep. at 50; Pl.'s Opp. Ex. 5.) Jane also had several phone conversations with the Assistant Superintendent of the Hamden school system asking for financial help to educate Mary outside the Hamden school system because, due to her post-traumatic stress disorder, Mary had difficulty attending school with Garcia and his friends present.

On February 8, 2006, Mary Doe moved out of the school district of Hamden to live with her father in a nearby town. In April 2006, the Board became aware that Mary Doe was residing out of the district, and her father requested that she be allowed to finish the school year at Hamden High. On April 27, 2006, the Superintendent of the Hamden Public Schools wrote to Mary's father granting her permission to finish the school year at Hamden High School as a nonresident, provided that she remain a student in good standing both behaviorally and academically.[5] If Mary committed any additional infractions prior to the end of the year, she would have to withdraw. What then ensued is difficult to decipher from the record presented. It appears that after the April 27th letter Mary Doe received at least one if not several infractions for cutting class and leaving school grounds. (See Jane Doe Dep. at 161; Def.'s Ex. E at 35.) Mary's father explained at his deposition that Mary regularly left school grounds to have lunch

---

[5] The letter itself has not been proffered, and the deposition testimony discussing the letter dates it as April 27, 2005. Given the chronology of events in this matter, the Court assumes this is a typographical error and the correct date is April 27, 2006. (See Def.'s Local R. 56(a)(1) Statement ¶ 17; Ex. B. at 149.)

because she did not want to see Garcia in the cafeteria. (Def.'s Ex. E at 35). Defendant asserts in its Rule 56(a) Statement that, following an infraction on April 28th, Mary Doe withdrew from Hamden High School, an assertion which is not supported by the record but which was also not disputed by Plaintiff. The portion of Mary Doe's deposition transcript submitted to the Court suggests that Mary Doe was expelled from Hamden High School, but neither the evidence presented nor the parties' briefs explicate the timing or the details of the situation. The deposition transcript also suggests that there was something untoward in the Board's decision to expel Mary,[6] though Plaintiff does not specifically argue that the Board discriminated against her by expelling her. Plaintiffs' evidence further suggests that Mary Doe either still attended or was still somehow attached to the Hamden school system in May, after the Board contends she withdrew, because Jane Doe had at least one conversation in May with the Assistant Superintendent of the Hamden school system seeking help with Mary's education. Jane Doe also stated in her interrogatory answers that she explained to the Assistant Superintendent at that time that Mary's emotional distress at home had been caused by not receiving the proper protection from Garcia at school, and that if they had expelled Garcia then she would not have had troubles at school or been compelled to move out of Hamden. Although the facts presented do not clearly explain the sequence of events, Plaintiff has proffered general evidence to show that Garcia's presence at school precipitated Mary's cutting and failing classes, ultimately contributing to her having to leave Hamden High School.

---

[6] Mary Doe testified: "When I was about to get expelled, when they told me I couldn't go there anymore, I told her [Dr. Messiah] that that was ridiculous. I told her there was no reason why I should have to leave. That's something that I didn't think was right. I told her I was not satisfied with that." (Mary Doe Dep. at 48.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d, 265 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. 2548); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in

support of the nonmoving party's case."). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). In determining whether the parties have met their respective burdens, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). However, the non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also FED. R. CIV. P. 56(e). Determinations of the proper weight to accord evidence and assessments of the credibility of witnesses are within the sole province of the jury and are therefore improper on a motion for summary judgment. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

## III.   DISCUSSION

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Recipients of federal funding, like the Hamden Board of Education, may be liable for damages under Title IX for student-on-student sexual harassment. See Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 653, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). There is no dispute that Defendant receives federal funding and is therefore liable for Title IX student-on-student sexual harassment. The issue before the Court is whether Plaintiff has proffered sufficient evidence of each element of a Title IX claim to survive summary judgment.

The Supreme Court established that a Title IX claim based on student-on-student sexual harassment is supported when a plaintiff satisfies the following elements: (1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the sexual harassment; and (3) the funding recipient was deliberately indifferent to the harassment. Doe ex rel. Doe v. Derby Bd. of Educ. ("Derby"), 451 F. Supp. 2d 438, 434 (D. Conn. 2006) (citing Vance v. Spencer Cty. Pub. Sch. Dist., 231 F.3d 253, 258-59 (6th Cir. 2000)); see also Davis, 526 U.S. at 633, 119 S. Ct. 1661; Kelly v. Yale Univ., No. 3:01-cv-1591 (JCH), 2003 WL 1563424, at *1, *4 (D. Conn. March 26, 2003). Title IX liability for student-on-student harassment is limited "to circumstances wherein the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 645, 119 S. Ct. 1661.

### A. Severity of Harassment

Student-on-student sexual assault constitutes sexual harassment for Title IX purposes. See Kelly, 2003 WL 1563424, at *3 (plaintiff's allegations of rape constitute severe and objectively offensive sexual harassment); see also Soper v. Hoben, 195 F.3d 845, 855 (6th Cir. 1999) (victim's allegations of rape, sexual abuse, and harassment qualify as severe, pervasive, and objectively offensive sexual harassment). In this case, the Board could not be liable for the rape of Mary Doe because it did not occur on campus. However, it could still be liable for "deliberate indifference to known post-assault harassment 'in a context subject to the school district's control,' if the harassment was 'so severe, pervasive, and objectively offensive that it can be said to deprive [plaintiff] of access to the educational opportunities or benefits provided by the school.'" Derby, 451 F. Supp. 2d at 445 (quoting Davis, 526 U.S. at 645, 650, 119 S. Ct. 1661); see also Kelly , 2003 WL 1563424, at *3.

A reasonable jury could conclude that Garcia's presence at school throughout the school year was harassing to Mary Doe because it exposed her to multiple encounters with him. Further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided to her at school. Kelly, 2003 WL 1563424, at *3; Derby, 451 F. Supp. 2d at 444. The intimidation and verbal assaults, both direct and indirect, of Mary Doe by Garcia's friends could also be found to create a hostile environment which interfered with Mary's educational opportunities. Although the record is not clear as to when and why Mary Doe left Hamden High School, a jury may find that Garcia's presence at school, combined with further intimidation by his friends, negatively affected Mary's ability to concentrate in school, earn passing grades, or attend certain classes,

and may thereby conclude that by failing to discipline Garcia or otherwise intervene, the Board was deliberately indifferent to severe harassment that denied Mary Doe of her educational opportunities. Plaintiff has thus presented a genuine issue of material fact as to the first element of the Davis test.

### B. Notice to Hamden Board of Education

While the Board may be liable for the post-assault school situation, there is no dispute that the Board did not receive notice of the sexual assault until after it took place and therefore cannot be held liable for the sexual assault itself. See Davis, 526 U.S. at 642, 649, 119 S. Ct. 1661 (actual and adequate notice of harassment required before liability is triggered); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000) (defendant school board not liable for harassment that occurred before plaintiff reported conduct to school); Derby, 451 F. Supp. 2d at 445-46 (defendant school board not liable for off-campus sexual assault that occurred before plaintiff reported any harassment); Kelly, 2003 WL 1563424, at *1, *3 (same for defendant university).

The Board may be liable for deliberate indifference to post-assault harassment once it became aware of the sexual assault and the related student harassment, and the record demonstrates a triable issue of fact as to when the Board received actual notice of the sexual assault. The Board maintains that it did not receive notice of Garcia's arrest until October 27, 2006, when the Berlin Police Department sent its official notice of Garcia's February arrest to the Board. (Def.'s Local R. 56(a)(1) Statement ¶ 20.) However, even if the Board was not officially notified until October, a jury may find that the Board had actual notice of the sexual assault in January or February when the police questioned student witnesses on school grounds. Moreover,

11

Mary and Jane Doe also testified that they each told Dr. Messiah and other school administrators about the sexual assault and about the related harassment. Although the precise date and details of the actual notice may be disputed, a reasonable jury could conclude that the Board received actual notice of the sexual assault in January or February yet failed to discipline Garcia or fully provide for Mary's safety and ability to proceed with her education. See Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 397 (E.D.N.Y. 2005) (Although "it is difficult to define what kind of notice is sufficient[,]... the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student.") (citations omitted).

    **C.    Deliberate Indifference**

Because there is evidence in the record from which a jury could find that the Board had actual notice of the sexual assault and the harassment of Mary Doe, the central issue is whether the Board's response, or lack thereof, could be found to amount to deliberate indifference. Title IX is violated when a federal funding recipient's response to known harassment amounts to "deliberate indifference to discrimination." Derby, 451 F. Supp. 2d at 447 (citing Hayut v. State Univ. of N.Y., 352 F.3d 733, 751 (2d Cir. 2003)); see also Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). "Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, and when remedial action only follows after a lengthy and unjustified delay." Hayut, 352 F.3d at 751 (internal citations and quotations omitted). The deliberate indifference "must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." Davis, 526 U.S. at 645, 119 S. Ct. 1661.

"Deliberate indifference" is more than a "mere reasonableness standard that transforms every school disciplinary decision into a jury question." Tesoriero, 382 F. Supp. 2d at 398 (quoting Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999)). However, deliberate indifference is often a "fact-laden question, for which bright line rules are ill-suited." Id. (citations omitted).

In this case, the evidence presented could permit a finding that the Board's response was unreasonably delayed and inadequate so as to constitute deliberate indifference by making Mary Doe vulnerable to harassment. In defending its conduct as reasonable, the Board points to the police response to Mary's complaints of student harassment, the escort provided for Mary to feel safe going to class, and the cessation of any direct verbal assaults after the police spoke to the offending students and their parents on February 6, 2006. However, the record suggests that Mary continued to feel intimidated and fearful at school after that date, and the mere fact that the Board allowed Garcia to continue to attend school through graduation without facing any disciplinary action, despite his having been arrested for sexual assault, may be considered by a reasonable jury to have been an unreasonable response to the situation. See Derby, 451 F. Supp. 2d at 447 (jury could find deliberate indifference where several weeks passed before the Board took disciplinary action against the student perpetrator of an off-campus sexual assault). The fact that Garcia was not expelled is not itself indicative of the Board's deliberate indifference. "A victim of peer harassment does not have the right to any particular remedial demand, immediate expulsion of her alleged harasser, or a remedy that would expose the school to a constitutional or statutory claim on the part of the accused, Kelly, 2003 WL 1563424, at *4 (citing Davis, 526 U.S. at 648-49 119 S. Ct. 1661), and the Hamden school handbook does not require suspension

or expulsion in all cases where a student is arrested for sexual assault. However, Title IX does require that the school make an effort to remedy known peer harassment in a manner that is not 'clearly unreasonable.'" Id. The Board's decision to allow Garcia to attend school through graduation without subjecting him to any disciplinary action, along with Mary's troubles attending class and feeling intimidated by Garcia and his friends on school grounds, could give rise to an inference that the Board was deliberately indifferent to the harassment subjected to Mary Doe by having been sexually assaulted by a classmate. See Derby, 451 F. Supp. 2d at 447; Kelly, 2003 WL 1563424, at *4. Therefore, a jury could reasonably conclude from the evidence presented that the Board's conduct following its notice of Mary Doe's sexual assault amounted to deliberate indifference.

## IV. CONCLUSION

For the reasons stated above, Plaintiff has presented triable issues of fact on each element of her Title IX claim arising out of student-on-student sexual harassment. Accordingly, the Board is not entitled to summary judgment as a matter of law, and Defendant's Motion for Summary Judgment [Doc. No. 31] is **denied.**

SO ORDERED.

Dated at New Haven, Connecticut, this 19th day of May, 2008.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court

.